UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE VELAZQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>NICOLE LARKIN AND DAN SUMULONG,<br><br>Defendants. | No. 13 C 644<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Jose Velazquez alleges that medical staff at Kane County Jail were deliberately indifferent to his medical needs while he was an inmate at the Jail in violation of the Eighth Amendment. *See* R. 7. Specifically, Velazquez alleges that Jail employees Nicole Larkin, an emergency medical technician, and Dan Sumulong, a nurse, failed to provide timely and sufficient care for an ankle injury Velazquez suffered in 2011 that allegedly continues to cause him pain. *See id.* Larkin and Sumulong have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. R. 62. For the following reasons, their motion is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light

most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

On May 2, 2011, Velazquez was scheduled for an appointment with a dentist outside the Jail to address several dental problems that were causing him pain. R. 67 ¶¶ 6-8. Velazquez's hands and feet were shackled for his trip to the dentist. *Id.* ¶ 9; R. 73 ¶ 1. As Velzquez walked to the vehicle that would take him to the dentist, his feet shackles became caught in a drainage grate, which caused him to fall and injure his left foot and ankle. R. 67 ¶ 10; R. 73 ¶ 1.

Larkin came to help Velazquez about three minutes after his fall. R. 67 ¶¶ 11-12; R. 73 ¶ 5. Velazquez testified he was in such "extreme pain" that he told Larkin not to touch his ankle, R. 64-2 at 17 (18:6-13), but Larkin was able to remove the shackles and examine Velazquez's ankle. R. 73 ¶ 5; R. 67 ¶ 12. An "EMT Note" included in Velazquez's medical records states that Velazquez's ankle had "minimal bruising" and there was no "deformity noted anywhere upon physical examination."

R. 64-4 at 44.¹ Velazquez testified that his ankle was purple and blue and "very swollen." R. 64-2 at 22 (23:9-10).²

Velazquez testified that he asked to be taken to the hospital. R. 64-3 at 4 (16:1-3). Instead he was taken to his dental appointment, R. 67 ¶ 16, and Larkin told him that she would call the doctor to arrange an x-ray. *Id.* ¶ 15. Velazquez testified that he was not given any pain medication, ice, or any other form of ankle support before going to the dentist. R. 64-3 at 6-7 (24:17–25:1, 26:24–27:2). His medical records, however, state that he was given ice. R. 64-4 at 44.

Velazquez testified that he saw Larkin and Sumulong upon his return from the dentist, R. 67 ¶ 19, although this is not reflected in his medical records. R. 73 ¶ 13. Velazquez also testified that Larkin and Sumulong took him back to his unit in a wheelchair, R. 67 ¶ 22, and gave him ice and Ibuprofen, *id.* ¶ 19, but denied him a cane, crutch, or walker. R. 64-3 at 6-7 (24:20–25:2). Velazquez testified further that he asked again to go to the hospital for an x-ray, but Larkin told him that the Jail did not have an x-ray technician or doctor available, and that he would see Dr. Sood four days later on May 6 when Dr. Sood was scheduled to be at the Jail. R. 67 ¶ 21.³

---

¹ The parties dispute whether Larkin authored the "EMT Note." *See* R. 67 ¶ 13. The signature below the note does not appear to be Larkin's. *See* R. 64-4 at 44. Nevertheless, Velazquez's medical records regarding his condition after his fall are likely relevant and admissible as records of a regularly conducted activity no matter who authored them.

² A security camera recorded Velazquez's fall, and Velasquez included an excerpt of this video as an exhibit to his brief in opposition to Defendants' summary judgment motion. Defendants contend that this video shows that Velasquez got up and walked after his fall. But the excerpt provided by Velasquez is only one minute and fifty seconds long and does not reveal how Velasquez got up off the floor.

³ In their response to Velazquez's statement of material facts, Defendants state that

3

Velazquez's medical records show that Dr. Sood was contacted the day Velazquez fell and Dr. Sood prescribed 600 mg of Motrin, twice a day, for three days. R. 64-4 at 23.

Velazquez testified that he saw Larkin and Sumulong each night between May 2 and May 5 and they provided him with pain medication, but continued to deny him a crutch, cane, or walker. R. 64-3 at 8 (29:12–32:8). A note in Velazquez's medical records dated May 5 states that his "ankle [was] swollen [and] discolor[ed]," but that Velazquez was "in no distress" and that he had "no distress on palpitation of the ankle." R. 64-4 at 42; R. 67 ¶ 26.

On May 6, four days after his fall, Velazquez had an appointment with Dr. Sood. *See* R. 64-4 at 43. Dr. Sood ordered an x-ray and changed Velazquez's medication from Motrin to Naprosyn, *id.*, but he did not send Velazquez to the hospital. R. 64-3 at 9 (34:6-8). Velazquez testified that Dr. Sood also gave him a wrap for his ankle and a shoe that supported his foot with a Velcro strap. *Id.* at 9 (33:15–34:5). However, Dr. Sood's note regarding the May 6 examination does not record that Dr. Sood gave Velazquez a wrap or special shoe. *See* R. 64-4 at 43. Velazquez also testified that Dr. Sood told him that "if he would have seen my foot or if he would have received the call, he would have stated to go to the hospital." R.

---

"neither Nicole Larkin nor Daniel Sumulong has any recollection of Mr. Velazquez pleading [with] them to take him to the hospital." R. 73 ¶ 15. Defendants, however, do not cite to any evidence to support this statement. Indeed, neither side ever references a deposition of Larkin or Sumulong, so the Court assumes they were not deposed.

64-3 at 9 (33:3-5).[4] Velasquez had an x-ray of his ankle on May 11 that revealed swelling to the soft tissue but no fracture or dislocation. R. 67 ¶ 31; R. 64-4 at 132.

Velazquez testified that the medical staff monitored his ankle in the weeks following his appointment with Dr. Sood. R. 64-3 at 9 (34:22–35:1). Velasquez also testified that "the swelling went down" after "two [or] three weeks," but "the pain never went away." *Id.* (35:2-8). Velasquez's medical records, however, reflect that he did not return to the Jail's health care unit until August 4, 2011, when he expressed concern about how his diabetic condition might complicate the healing of a blister on his right foot. R. 64-4 at 40. Velasquez's medical records do not reflect that he ever complained about his ankle injury again.

At his deposition on October 9, 2014, Velazquez appeared with a cane, and testified that he used a cane to walk because of pain in his left ankle. R. 64-3 at 10 (38:13-18). Velazquez also testified that a doctor at the correctional facility where he is currently incarcerated "diagnosed [his] foot as maybe possibly having a recurring, like, sprain or nerve damage. . . . due to the fact of the lack of attention I got when I had the fall. . . . It wasn't wrapped. It should have been wrapped right away, and they didn't wrap it. That's what he said it was caused by." *Id.* (39:4-15). The record for this case does not include any affidavit or testimony from a doctor supporting this claim.

---

[4] In their response to Velazquez's statement of material facts, Defendants dispute that Dr. Sood made such a statement, and argue, "Had Dr. Sood felt that Mr. Velazquez should have been sent to the hospital, Dr. Sood would have ordered as such during his appointment on May 6, 2011." R. 73 ¶ 29. Defendants, however, do not cite to any evidence to support this statement. Neither side ever references a deposition of Dr. Sood, so the Court assumes he was not deposed.

5

## Analysis

Velazquez argues that he suffers from pain and nerve damage in his ankle because Larkin and Sumulong delayed in treating his ankle when it was first injured in 2011, and that this delay constitutes deliberate indifference. "Prison officials violate the Eight Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim under this standard premised upon inadequate medical treatment, a plaintiff must show (1) that the plaintiff suffered an objectively serious risk of harm, and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Defendants have not argued that Velazquez's injury is not objectively serious, so only the subjective element of the deliberate indifference analysis is at issue here. The subjective element requires the plaintiff to show that a defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). In the prison context, "medical professionals . . . are entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under the circumstances at issue." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). "When a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a

substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. This standard—"akin to criminal recklessness," *Williams v. Fahim*, 572 Fed. App'x 445, 448 (7th Cir. 2014)—is high enough such that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," but is not so high that the plaintiff is "required to show that he was literally ignored." *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012). A prison doctor may exhibit deliberate indifference to a known condition (i) "through inaction," (ii) "by persisting with inappropriate treatment," or (iii) "by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain." *Gatson v. Ghosh*, 498 Fed. App'x 629, 631-32 (7th Cir. 2012).

In this case, Velazquez has failed to produce evidence that would enable a reasonable jury to find that Larkin and Sumulong's treatment of his ankle violated his Eighth Amendment rights. It is undisputed that they examined him, secured Dr. Sood's prescription for pain medication, delivered that medication to him, and scheduled an appointment with Dr. Sood as soon as Dr. Sood was available. Velazquez argues that in addition to this treatment they should have taken him to the hospital immediately and given him a crutch or wrap for his ankle. But a deliberate indifference analysis does not call for the court to "second-guess [doctors' treatment] decisions." *See Fitzgerald v. Greer*, 324 Fed. App'x 510, 515 (7th Cir. 2009). And an allegation of merely ineffective treatment is insufficient to state a

7

claim for deliberate indifference. *See King*, 680 F.3d at 1019 ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). Moreover, it is undisputed that Velazquez's ankle wasn't broken. Whether a sprained ankle necessitated a trip to the hospital, should have been wrapped, or required provision of a crutch or cane is a decision the Eight Amendment leaves to medical professionals.

Additionally, Velazquez's argument that Larkin and Sumulong were deliberately indifferent because they delayed provision of a wrap or special shoe fails because there is no "verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *see also Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"). Furthermore, to the extent Velazquez argues that Larkin and Sumulong were deliberately indifferent because they delayed in taking him to a doctor or seeking an x-ray, such diagnostic examinations did not materially change Velazquez's prescribed treatment once he received them. This is likely due to the undisputed fact that Velazquez's ankle wasn't broken. The Seventh Circuit has held that similar delays did not constitute deliberate indifference. *See Davis v. Samalio*, 286 Fed. App'x 325, 328 (7th Cir. 2008) ("[The plaintiff] presented no competent medical evidence supporting the theory that the eight-day delay in procuring a second round

8

of x-rays had a detrimental effect on his fractured wrist."); *Johnson v.* Sango, 1996 WL 67704, at *2 (7th Cir. Feb. 13, 1996) ("Although [the plaintiff] did allege some delay in the taking of his x-rays, [the plaintiff's] alleged back and shoulder pain was not of the severity to require immediate medical attention and thus it was reasonable for [the doctor] to delay treatment until she had seen the x-rays."). Thus, no reasonable jury could find that Larkin and Sumulong's decisions regarding scheduling of treatment constituted deliberate indifference.

**Conclusion**

For the foregoing reasons, Larkin and Sumulong's motion for summary judgment, R. 62, is granted. The Court will enter judgment in favor of Defendants.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 27, 2015

9